FILED
CLERK, U.S. DISTRICT COURT

5/9/2025

CENTRAL DISTRICT OF CALIFORNIA
BY: ___MMC___ DEPUTY

BILAL A. ESSAYLI
United States Attorney
DAVID T. RYAN
Chief, National Security Division
MAXWELL COLL (Cal. Bar No. 312651)
ALEXANDER S. GORIN (Cal. Bar No. 326235)
Assistant United States Attorneys
Cyber & Intellectual Property Crimes Section
NISHA CHANDRAN (Cal. Bar No. 325345)
Assistant United States Attorney
Major Frauds Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:  (213) 894-1785/3190/2429
     Facsimile:  (213) 894-0141
     E-mail:    maxwell.coll@usdoj.gov
                alexander.gorin@usdoj.gov
                nisha.chandran@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

          Plaintiff,

               v.

JINGLIANG SU,
    aka "James,"

          Defendant.

No. CR  2:25-CR-00362-MRA

PLEA AGREEMENT FOR DEFENDANT
JINGLIANG SU

     1.   This constitutes the plea agreement between JINGLIANG SU

("defendant") and the United States Attorney's Office for the Central

District of California (the "USAO") and the United States Department

of Justice, Computer Crime and Intellectual Property Section ("CCIPS"

and together with the USAO, the "United States") in the above-

captioned case.  This agreement is limited to the USAO and CCIPS and

1  cannot bind any other federal, state, local, or foreign prosecuting,

2  enforcement, administrative, or regulatory authorities.

3                          DEFENDANT'S OBLIGATIONS

4       2.   Defendant agrees to:

5            a.   Give up the right to indictment by a grand jury and,

6  at the earliest opportunity requested by the USAO and CCIPS and

7  provided by the Court, appear and plead guilty to a single-count

8  information in the form attached to this agreement as Exhibit B or a

9  substantially similar form, which charges defendant with conspiracy

10 to commit an offense against the United States, in violation of 18

11 U.S.C. § 371, to wit, operation of an unlicensed money transmitting

12 business, in violation of 18 U.S.C. §§ 1960(b)(1)(B) and

13 1960(b)(1)(C).

14           b.   Not contest the Factual Basis agreed to in this

15 agreement.

16           c.   Abide by all agreements regarding sentencing contained

17 in this agreement.

18           d.   Appear for all court appearances, surrender as ordered

19 for service of sentence, obey all conditions of any bond, and obey

20 any other ongoing court order in this matter.

21           e.   Not commit any crime; however, offenses that would be

22 excluded for sentencing purposes under United States Sentencing

23 Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not

24 within the scope of this agreement.

25           f.   Be truthful at all times with the United States

26 Probation and Pretrial Services Office and the Court.

27

28

1         g.    Pay the applicable special assessment at or before the

2  time of sentencing unless defendant has demonstrated a lack of

3  ability to pay such assessments.

4         h.    Defendant agrees that any and all criminal debt

5  ordered by the Court will be due in full and immediately.  The

6  government is not precluded from pursuing, in excess of any payment

7  schedule set by the Court, any and all available remedies by which to

8  satisfy defendant's payment of the full financial obligation,

9  including referral to the Treasury Offset Program.

10        i.    Complete the Financial Disclosure Statement on a form

11 provided by the United States and, within 30 days of defendant's

12 entry of a guilty plea, deliver the signed and dated statement, along

13 with all of the documents requested therein, to the United States by

14 either email at usacac.FinLit@usdoj.gov (preferred) or mail to the

15 USAO Financial Litigation Section at 300 North Los Angeles Street,

16 Suite 7516, Los Angeles, CA 90012.  Defendant agrees that defendant's

17 ability to pay criminal debt shall be assessed based on the completed

18 Financial Disclosure Statement and all required supporting documents,

19 as well as other relevant information relating to ability to pay.

20        j.    Authorize the United States to obtain a credit report

21 upon returning a signed copy of this plea agreement.

22        k.    Consent to the United States inspecting and copying

23 all of defendant's financial documents and financial information held

24 by the United States Probation and Pretrial Services Office.

25               <u>THE UNITED STATES' OBLIGATIONS</u>

26    3.    The United States agrees to:

27        a.    Not contest the Factual Basis agreed to in this

28 agreement.

1         b.   Abide by all agreements regarding sentencing contained

2  in this agreement.

3         c.   At the time of sentencing, provided that defendant

4  demonstrates an acceptance of responsibility for the offense up to

5  and including the time of sentencing, recommend a two-level reduction

6  in the applicable Sentencing Guidelines offense level, pursuant to

7  U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

8  additional one-level reduction if available under that section.

9  <u>NATURE OF THE OFFENSE</u>

10      4.   Defendant understands that for defendant to be guilty of

11  the crime charged in the single-count Information, that is,

12  conspiracy to operate an unlicensed money transmitting business, in

13  violation of Title 18, United States Code, Section 371, the following

14  must be true:  (1) there was an agreement between two or more persons

15  to commit at least one crime as charged in the information, to wit:

16  operation of an unlicensed money transmitting business, in violation

17  of Title 18, United States Code, Sections 1960(a), (b)(1)(B), and

18  (b)(1)(C); (2) defendant became a member of the conspiracy knowing of

19  at least one of its objects and intending to help accomplish it; and

20  (3) one of the members of the conspiracy performed at least one overt

21  act for the purpose of carrying out the conspiracy.

22      5.   Defendant understands that for defendant to be guilty of

23  the objects of the conspiracy, that is, operation of an unlicensed

24  money transmitting business, in violation of Title 18, United States

25  Code, Sections 1960(a), (b)(1)(B), and (b)(1)(C), the following must

26  be true: (1) defendant knowingly conducted, controlled, managed,

27  supervised, directed, or owned all or part of a money transmitting

28  business affecting interstate or foreign commerce; and (2) the

business was unlicensed in that it failed to comply with the money transmitting business regulation requirements under Title 31, United States Code, Section 5330 and the regulations promulgated under that section; or otherwise involved the transportation or transmission of funds that were known to the defendant to have been derived from a criminal offense or were intended to be used to promote or support unlawful activity. A money transmitting business transfers funds on behalf of the public by any and all means including but not limited to transfers within the United States or to locations abroad by wire, check, draft, facsimile, or courier. A defendant does not need specific knowledge of the registration requirements to violate Title 18, United States Code, Section 1960.

PENALTIES AND RESTITUTION

6. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 371, is: five years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

7. Defendant understands that defendant will be required to pay full restitution to the victims of the offense to which defendant is pleading guilty. Defendant agrees that, in return for the United States' compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty. In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses

suffered by that victim as a result: any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty.  The parties agree that the applicable amount of restitution is at least $36,905,259.  The parties agree that the amount of restitution could change based on facts that come to the attention of the parties prior to sentencing.

8.    Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

9.    Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

10.    Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.    Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.    Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his conviction on his immigration status.    Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

<u>FACTUAL BASIS</u>

11.    Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.    Defendant and the USAO and CCIPS agree to the Factual Basis provided in Exhibit A hereto and agree that this Factual Basis is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 13 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

1                            SENTENCING FACTORS

2          12.   Defendant understands that in determining defendant's

3    sentence the Court is required to calculate the applicable Sentencing

4    Guidelines range and to consider that range, possible departures

5    under the Sentencing Guidelines, and the other sentencing factors set

6    forth in 18 U.S.C. § 3553(a).  Defendant understands that the

7    Sentencing Guidelines are advisory only, that defendant cannot have

8    any expectation of receiving a sentence within the calculated

9    Sentencing Guidelines range, and that after considering the

10   Sentencing Guidelines and the other § 3553(a) factors, the Court will

11   be free to exercise its discretion to impose any sentence it finds

12   appropriate up to the maximum set by statute for the crime of

13   conviction.

14         13.   Defendant and the United States agree to the following

15   applicable Sentencing Guidelines factors:

16     Base Offense Level:              8          U.S.S.G. § 2S1.1(a)(2)
17                                                 U.S.S.G. § 2X1.1(a)

18     Laundered Funds Between More    +20    U.S.S.G. § 2B1.1(b)(1)(K)
       Than $9,500,000 and Less Than   to
19     $65,000,000                     +22    U.S.S.G. § 2B1.1(b)(1)(L)

20     Business of Laundering Funds    +4     U.S.S.G. § 2S1.1(b)(2)(C)

21

22   Defendant and the United States reserve the right to argue that

23   additional specific offense characteristics, adjustments, and

24   departures under the Sentencing Guidelines are appropriate.

25   Specifically, the government reserves the right to argue that

26   defendant should receive up to a 22-level enhancement for laundered

27   funds exceeding $25,000,000, under U.S.S.G. § 2B1.1(b)(1)(L), and

28   defendant reserves the right to argue that defendant should receive

                                      8

1    no more than a 20-level enhancement for laundered funds exceeding

2    $9,500,000, under U.S.S.G. § 2B1.1(b)(1)(K).

3        14.   Defendant understands that there is no agreement as to

4    defendant's criminal history or criminal history category.

5        15.   Defendant and the United States reserve the right to argue

6    for a sentence outside the sentencing range established by the

7    Sentencing Guidelines based on the factors set forth in 18 U.S.C.

8    § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

9                     <u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

10       16.   Defendant understands that by pleading guilty, defendant

11   gives up the following rights:

12            a.   The right to persist in a plea of not guilty.

13            b.   The right to a speedy and public trial by jury.

14            c.   The right to be represented by counsel -- and if

15   necessary have the Court appoint counsel -- at trial.  Defendant

16   understands, however, that, defendant retains the right to be

17   represented by counsel -- and if necessary have the Court appoint

18   counsel -- at every other stage of the proceeding.

19            d.   The right to be presumed innocent and to have the

20   burden of proof placed on the government to prove defendant guilty

21   beyond a reasonable doubt.

22            e.   The right to confront and cross-examine witnesses

23   against defendant.

24            f.   The right to testify and to present evidence in

25   opposition to the charges, including the right to compel the

26   attendance of witnesses to testify.

27

28

g.    The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF RETURN OF DIGITAL DATA</u>

17.    Understanding that the government has in its possession digital devices and/or digital media seized from defendant, defendant waives any right to the return of digital data contained on those digital devices and/or digital media and agrees that if any of these digital devices and/or digital media are returned to defendant, the government may delete all digital data from those digital devices and/or digital media before they are returned to defendant.

<u>WAIVER OF VENUE</u>

18.    Having been fully advised by defendant's attorney regarding the requirements of venue with respect to the offense to which defendant is pleading guilty, to the extent the offense to which defendant is pleading guilty were committed, begun, or completed outside the Central District of California, defendant knowingly, voluntarily, and intelligently waives, relinquishes, and gives up: (a) any right that defendant might have to be prosecuted only in the district where the offense to which defendant is pleading guilty were committed, begun, or completed; and (b) any defense, claim, or argument defendant could raise or assert based upon lack of venue with respect to the offense to which defendant is pleading guilty.

1

## WAIVER OF APPEAL OF CONVICTION

2   19.  Defendant understands that, with the exception of an appeal

3   based on a claim that defendant's guilty plea was involuntary, by

4   pleading guilty defendant is waiving and giving up any right to

5   appeal defendant's conviction on the offense to which defendant is

6   pleading guilty.  Defendant understands that this waiver includes,

7   but is not limited to, arguments that the statute to which defendant

8   is pleading guilty is unconstitutional, and any and all claims that

9   the statement of facts provided herein is insufficient to support

10   defendant's plea of guilty.

11   LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE AND COLLATERAL ATTACK

12   20.  Defendant agrees that, provided the Court imposes a total

13   term of imprisonment of no more than 60 months, defendant gives up

14   the right to appeal all of the following: (a) the procedures and

15   calculations used to determine and impose any portion of the

16   sentence; (b) the term of imprisonment imposed by the Court; (c) the

17   fine imposed by the Court, provided it is within the statutory

18   maximum; (d) to the extent permitted by law, the constitutionality or

19   legality of defendant's sentence, provided it is within the statutory

20   maximum; (e) the term of probation or supervised release imposed by

21   the Court, provided it is within the statutory maximum; and (f) any

22   of the following conditions of probation or supervised release

23   imposed by the Court: the conditions set forth in Second Amended

24   General Order 20-04 of this Court; the drug testing conditions

25   mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and

26   drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

27   21.  The United States agrees that, provided (a) all portions of

28   the sentence are at or below the statutory maximum specified above

11

and (b) the Court imposes a term of imprisonment of no less than 60 months, the United States gives up its right to appeal any portion of the sentence, with the exception that the United States reserves the right to appeal that the United States reserves the right to appeal the amount of restitution ordered if that amount is less than $36,905,259.

22.   Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.   Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

23.   Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the United States will be relieved of all of its obligations under this agreement; and (b) should the United States choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and

(ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

RESULT OF VACATUR, REVERSAL OR SET-ASIDE

24.   Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the United States and defendant will be released from all their obligations under this agreement.

EFFECTIVE DATE OF AGREEMENT

25.   This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

26.   Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the United States may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the United States to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the United States in writing.  If the United States declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to

withdraw the guilty plea, and (b) the United States will be relieved of all its obligations under this agreement.

27. Following the Court's finding of a knowing breach of this agreement by defendant, should the United States choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c. Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

1        COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

2                         OFFICE NOT PARTIES

3        28.  Defendant understands that the Court and the United States

4   Probation and Pretrial Services Office are not parties to this

5   agreement and need not accept any of the United States' sentencing

6   recommendations or the parties' agreements to facts or sentencing

7   factors.

8        29.  Defendant understands that both defendant and the United

9   States are free to: (a) supplement the facts by supplying relevant

10  information to the United States Probation and Pretrial Services

11  Office and the Court, (b) correct any and all factual misstatements

12  relating to the Court's Sentencing Guidelines calculations and

13  determination of sentence, and (c) argue on appeal and collateral

14  review that the Court's Sentencing Guidelines calculations and the

15  sentence it chooses to impose are not error, although each party

16  agrees to maintain its view that the calculations in paragraph 13 are

17  consistent with the facts of this case.  While this paragraph permits

18  both the United States and defendant to submit full and complete

19  factual information to the United States Probation and Pretrial

20  Services Office and the Court, even if that factual information may

21  be viewed as inconsistent with the facts agreed to in this agreement,

22  this paragraph does not affect defendant's and the United States'

23  obligations not to contest the facts agreed to in this agreement.

24       30.  Defendant understands that even if the Court ignores any

25  sentencing recommendation, finds facts or reaches conclusions

26  different from those agreed to, and/or imposes any sentence up to the

27  maximum established by statute, defendant cannot, for that reason,

28  withdraw defendant's guilty plea, and defendant will remain bound to

                              15

fulfill all defendant's obligations under this agreement.  Defendant

understands that no one -- not the prosecutor, defendant's attorney,

or the Court -- can make a binding prediction or promise regarding

the sentence defendant will receive, except that it will be within

the statutory maximum.

NO ADDITIONAL AGREEMENTS

31.  Defendant understands that, except as set forth herein,

there are no promises, understandings, or agreements between the

United States and defendant or defendant's attorney, and that no

additional promise, understanding, or agreement may be entered into

unless in a writing signed by all parties or on the record in court.

//

//

//

1       <u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

2           32.  The parties agree that this agreement will be considered

3   part of the record of defendant's guilty plea hearing as if the

4   entire agreement had been read into the record of the proceeding.

5   AGREED AND ACCEPTED

6   UNITED STATES ATTORNEY'S OFFICE
    FOR THE CENTRAL DISTRICT OF
7   CALIFORNIA

8   BILAL A. ESSAYLI
    United States Attorney

9

10  _____          5/9/2025
                                              _____
11  MAXWELL COLL                              Date
    NISHA CHANDRAN
    ALEXANDER S. GORIN
12  Assistant United States Attorneys

13  STEFANIE SCHWARTZ
    TAMARA LIVSHIZ
14  Trial Attorneys
    Criminal Division, Computer Crime
15  and Intellectual Property Section

16
        *Jingliang Su*                        04/29/2025
17  _____          _____
    JINGLIANG SU                              Date
18  Defendant

19
                                              04/29/2025
20  _____          _____
    JONATHON PERLISS                          Date
21  Attorney for Defendant JINGLIANG SU

22

23

24

25

26

27

28

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  This agreement has been read to me in Mandarin, the language I understand best.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms.  I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_Jingliang Su_ _____       _04/28/2025_ _____
JINGLIANG SU                             Date
Defendant

## CERTIFICATION OF INTERPRETER

I, Junting Tan, am fluent in the written and spoken English and Mandarin languages. I accurately translated this entire agreement from English into Mandarin to defendant JINGLIANG SU on this date.

_____        04/28/2026
INTERPRETER                              Date


## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am JINGLIANG SU's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_____        04/29/2025
JONATHON PERLISS                         Date
Attorney for Defendant JINGLIANG SU

1

**<u>EXHIBIT A</u>**

2

<u>FACTUAL BASIS</u>

3       1.    Beginning from at least November 2021, and continuing

4  through at least July 2023, in Los Angeles County, within the Central

5  District of California, and elsewhere, defendant knowingly conspired

6  with Co-Conspirator 1, Co-Conspirator 2, Co-Conspirator 3, and

7  others, to operate an unlicensed money transmitting business.

8  Defendant participated in and knew of the agreement to operate an

9  unlicensed money transmitting business and intended to help

10 accomplish the objects of the conspiracy.  The unlicensed money

11 transmitting business received millions of dollars in victim funds

12 from U.S. persons targeted in cryptocurrency investment scams, also

13 known as "pig butchering scams," and other related schemes.

14 Defendant's unlicensed money transmitting business converted

15 virtually all of the victim proceeds to the cryptocurrency Tether (or

16 USDT) for a commission.  After converting the proceeds, the

17 unlicensed money transmitting business facilitated the transfer of

18 the USDT to a cryptocurrency wallet controlled by individuals in

19 Cambodia.

20 **I.    Defendant Transfers Funds Required to Open Bahamas Account #1**

21      2.    Defendant conspired to open and operate Axis Digital

22 Limited ("Axis Digital"), an entity that Co-Conspirator 1

23 incorporated under the laws of the Commonwealth of the Bahamas on or

24 about November 30, 2021.  Using the Axis Digital business entity,

25 defendant and his co-conspirators opened a bank account ("Bahamas

26 Account #1") with the Bahamian financial institution Deltec Bank.

27      3.    After setting up the Axis Digital business entity and

28 Bahamas Account #1, defendant, Co-Conspirator 1, Co-Conspirator 2,

Co-Conspirator 3, and others conspired to transfer roughly $1 million
to Co-Conspirator 1's cryptocurrency account to demonstrate a proof
of funds to Deltec Bank.  The proof of funds was required for Deltec
Bank to allow wire transfers into Bahamas Account #1 from other
financial institutions.

4.   On or around June 8, 2022, Co-Conspirator 2 introduced
defendant, Co-Conspirator 1, and Co-Conspirator 3 to each other on an
encrypted messaging platform.  Defendant and his co-conspirators
participated in discussions about the transfer of roughly $1 million
in cryptocurrency to Co-Conspirator 1.  Defendant also participated
in discussions about Co-Conspirator 1 returning the roughly $1
million in cryptocurrency to the co-conspirators after sending a
proof of funds to Deltec Bank.  Defendant in fact sent approximately
$17,862 in cryptocurrency to Co-Conspirator 1, who also received
funds from Co-Conspirator 3.  Co-Conspirator 1 then sent a proof of
funds to Deltec Bank, which enabled Axis Digital to begin receiving
wires from other financial institutions.

**II.  Defendant Traveled to Cambodia to Discuss the Transfers of
Cryptocurrency to Individuals Involved in Scam Centers**

5.   In July 2022, after facilitating the opening of Bahamas
Account #1, but before funds transferred into Bahamas Account #1 from
victims in the United States, defendant, Co-Conspirator 1, and Co-
Conspirator 2 traveled to Phnom Penh, Cambodia, to meet with Co-
Conspirator 3 and other co-conspirators based in Cambodia and
elsewhere.  During the trip to Cambodia, defendant and co-
conspirators discussed the transfer of money from U.S. bank accounts
to Bahamas Account #1, and the subsequent conversion of those funds
to USDT for a commission.  Defendant and co-conspirators also

discussed the transfer of USDT from Bahamas Account #1 to a cryptocurrency wallet that co-conspirators in Cambodia controlled.

**III. Axis Digital Limited Received More Than $36 Million From U.S. Bank Accounts Opened in the Names of U.S. Shell Companies**

6.    Between June 2022 and July 2023, the Axis Digital bank account received at least approximately $36,905,259 from U.S. bank accounts set up in the names of U.S. shell companies.  Each of the shell companies received these funds from U.S. victims of cryptocurrency investment scams or related schemes.  This includes the following shell entities:

a.    B&C Commerce LLC, a shell company registered with the California Secretary of State on or about January 21, 2022, with a principal address in San Gabriel, California;

b.    Jimei Trading Inc., a shell company registered with the California Secretary of State on or about May 15, 2022, with a principal address in San Gabriel, California;

c.    YXJ Trading Corporation, a shell company registered with the California Secretary of State on or about July 30, 2022, with a principal address in Monterey Park, California;

d.    YYJ Consulting Corporation, a shell company registered with the California Secretary of State on or about August 25, 2022, with a principal address in Monterey Park, California;

e.    Sea Dragon Trading, LLC, a shell company registered with the California Secretary of State on or about September 8, 2022, with a principal address in Alhambra, California;

f.    SMX Beauty Inc., a shell company registered with the California Secretary of State on or about October 13, 2022, with a principal address in Monterey Park, California;

22

g.   SMX Travel Inc., a shell company registered with the California Secretary of State on or about October 13, 2022, with a principal address in Monterey Park, California; and

h.   Sea Dragon Remodel, Inc., a shell company registered with the California Secretary of State on or about October 17, 2022, with a principal address in Vernon, California.

7.   Defendant and his co-conspirators created so-called digital transaction agreements and "Know Your Customer" or "KYC" forms associated with the U.S. shell companies, including those listed in Paragraph 8, detailing the conversion of millions of dollars to USDT. The agreements each listed Axis Digital as the business entity conducting the conversion of funds.  The agreements each listed the same cryptocurrency address beginning with TRteo (the "TRteo Address") as the receiving wallet.  Defendant knew the KYC forms for the shell companies and related wire transfers did not reflect legitimate business transfers.

## IV. Defendant Directed the Transfer of Funds to a Cryptocurrency Wallet Controlled by Co-Conspirators in Cambodia

8.   When the U.S. bank accounts set up in the names of shell companies transferred victim funds to Bahamas Account #1, defendant and his co-conspirators directed Deltec Bank employees to convert the funds into USDT and to transfer the funds to the TRteo Address. Defendant directly messaged with Deltec Bank employees to coordinate these conversions and money transfers.  Defendant and his co-conspirators converted all of the funds in Bahamas Account #1 – more than $36 million – to USDT.  Defendant and his co-conspirators then directed the transfer of all of the funds to the TRteo Address.

9.    Defendant earned a commission on wire transfers into Bahamas Account #1 or the subsequent transfer of USDT to the TRteo Address. Defendant prepared and sent ledgers to co-conspirators detailing the commissions he and others earned on wire transfers.

10.    In June 2023, defendant -- using the alias Jingliang Su Martinez -- was added as a signatory for Bahamas Account #1.   Co-Conspirator 1 sent Deltec Bank a letter confirming that defendant had been named a director of Axis Digital Limited and would have control of Bahamas Account #1.

11.    Defendant agrees that Axis Digital laundered at least $36,905,259 in funds from U.S. shell companies.

**V.    Defendant Did Not Comply With Money Transmitting Business Regulations and Knew the Source of Funds Derived from a Criminal Offense**

12.    Defendant knowingly conducted, controlled, managed, supervised, directed, or owned all or part of the Axis Digital money transmitting business, which affected interstate and foreign commerce.   The Axis Digital business was unlicensed in that it failed to comply with the money transmitting business regulation requirements under 31 U.S.C. § 5330 and the regulations promulgated under that section.   Defendant came to understand that at least a portion of the funds flowing into Bahamas Account #1 were derived from a criminal offense or were otherwise intended to be used to promote or support unlawful activity.