1  TODD BLANCHE
   Deputy Attorney General
2  BILAL A. ESSAYLI
   First Assistant United States Attorney
3  IAN V. YANNIELLO
   Chief, National Security Division
4  MAXWELL COLL (Cal Bar No. 312651)
   ALEXANDER S. GORIN (Cal. Bar No. 326235)
5  Assistant United States Attorneys
   National Security Division
6  NISHA CHANDRAN (Cal. Bar No. 325345)
   Assistant United States Attorney
7  Major Frauds Section
        1500 United States Courthouse
8       312 North Spring Street
        Los Angeles, California 90012
9       Telephone:  (213) 894-1785/2429
        Facsimile:  (213) 894-0141
10      E-mail:    maxwell.coll@usdoj.gov
                   nisha.chandran@usdoj.gov
11
   Attorneys for Plaintiff
12 UNITED STATES OF AMERICA

13              UNITED STATES DISTRICT COURT

14          FOR THE CENTRAL DISTRICT OF CALIFORNIA

15 UNITED STATES OF AMERICA,        No. CR 2:25-00362-RGK

16            Plaintiff,            GOVERNMENT'S SENTENCING POSITION
                                    REGARDING DEFENDANT JINGLIANG SU
17               v.

18 JINGLIANG SU,
      "James,"

19
            Defendant.
20

21

22

23      Plaintiff United States of America, by and through its counsel

24 of record, the First Assistant United States Attorney for the Central

25 District of California and Assistant United States Attorneys Maxwell

26 Coll, Nisha Chandran, and Alexander Gorin, hereby files its

27 sentencing position for defendant JIGNLIANG SU.

28      This sentencing position is based upon the attached memorandum

1 of points and authorities, the declaration of Assistant United States

2 Attorney Nisha Chandran, the declaration of Special Agent George

3 Jasek, the files and records in this case, the United States

4 Probation and Pretrial Services Office's presentence investigation

5 report, and such further evidence and argument as the Court may

6 permit.

7  Dated: January 12, 2026          Respectfully submitted,

8                                   TODD BLANCHE
                                    Deputy Attorney General
9
                                    BILAL A. ESSAYLI
10                                  First Assistant United States
                                    Attorney
11
                                    IAN V. YANNIELLO
12                                  Assistant United States Attorney
                                    Chief, National Security Division
13

14                                  _____/s/_____
                                    MAXWELL COLL
15                                  NISHA CHANDRAN
                                    ALEXANDER S. GORIN
16                                  Assistant United States Attorneys

17                                  STEFANIE SCHWARTZ
                                    TAMARA LIVSHIZ
18                                  Trial Attorneys
                                    Criminal Division, Computer Crime
19                                  and Intellectual Property Section

20                                  Attorneys for Plaintiff
                                    UNITED STATES OF AMERICA
21

22

23

24

25

26

27

28

1

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

**I.    INTRODUCTION**

3      This case arises out of an international scheme to launder

4  millions of dollars stolen from U.S. victims of cryptocurrency

5  investment scams (also known as "pig butchering" scams).  The

6  government has charged by indictment six defendants involved in the

7  money-laundering network, five of whom have pleaded guilty and one of

8  whom remains a fugitive.[1]  The government has also charged by

9  information three other individuals involved in the scheme, all of whom

10 have also pleaded guilty, including this defendant.[2]  Defendant

11 JINGLIANG SU is the eighth defendant to be sentenced of the nine

12 individuals charged and was directly involved in the receipt of victim

13 funds and the conversion of victim funds to the cryptocurrency Tether.

14      On June 9, 2025, defendant pleaded guilty pursuant to a plea

15 agreement to one count of criminal conspiracy to operate an

16 unlicensed money transmitting business, in violation of 18 U.S.C. §

17 371.  (Dkts. 26, 35.)  In the plea agreement, defendant JINGLIANG SU

18 agreed to a base offense level of 8; that defendant JINGLIANG SU

19 laundered funds between more than $9,500,000 and $65,000,000, such

20 that a +20 or +22 specific offense characteristic must be applied;

21 and that defendant was in the business of laundering funds, such that

22 another +4 enhancement must be applied.  (Dkt. 26 at 8.)

23

24

_____

25      [1] All of the indicted defendants are in cases pending before

26 this Court.  <u>See United States v. Lu Zhang, Joseph Wong, Justin
   Walker, and Hailong Zhu</u>, 2:23-00596-RGK-3; <u>United States v. Daren Li

27 and Yicheng Zhang</u>, 2:24-393-RGK.

      [2] <u>See United States v. Shengsheng He</u>, 2:25-CR-00175-RGK; <u>United

28 States v. Jose Somarriba</u>, 2:25-CR-00181-RGK; and <u>United States v.
   Jingliang Su</u>, 2:25-CR-00362-RGK.

1    The United States Probation and Presentence Office ("USPPO")

2    issued its Presentence Report ("PSR") on October 6, 2025.  (Dkt. 41.)

3    The PSR calculated a total offense level of 29, which included a base

4    offense level of 8 plus a 22-level increase because the loss

5    attributable to defendant was greater than $25,000,000 (PSR ¶¶ 73-74,

6    91); a four-level increase because defendant was in the business of

7    laundering funds (PSR ¶¶ 75-76); a three-level reduction for

8    defendant's acceptance of responsibility (PSR ¶¶ 87-88); and a two-

9    level reduction for zero-point-offender status (PSR ¶¶ 89-90.)  Based

10   on a total offense level of 29, and a Criminal History Category of I,

11   the PSR calculated an advisory Guideline range of 87 to 108 months'

12   incarceration.  (PSR ¶ 140.)  The PSR notes that the statutory

13   maximum term of imprisonment is five years.  (PSR ¶ 139.)  Defendant

14   agrees in his sentencing position with the PSR's Guidelines

15   calculation.

16   The government agrees with the PSR's criminal history

17   calculation and the offense-level calculation.  However, the

18   government believes that a further six-level reduction is appropriate

19   for the reasons stated in its contemporaneously filed motion.  In

20   light of this, the total offense level calculation decreases to 23

21   and the resulting advisory Guidelines range is 46 to 57 months.

22   Thus, the government respectfully requests that the Court sentence

23   defendant to: (1) a Guidelines term of 46 months' imprisonment; (2)

24   three years of supervised release; (3) restitution in the amount of

25   $26,867,242.44; and (4) a mandatory special assessment of $100.

26

27

28

1   **II.    OVERVIEW OF STRUCTURE OF SCAM AND MONEY LAUNDERING NETWORK**

2          As described in Count One of the Information, the conspiracy

3   involved an international network of co-conspirators who scammed U.S.

4   victims and laundered victim money through U.S. shell companies,

5   international bank accounts, and cryptocurrency wallets.

6          **International Scammers**:  First, unknown co-conspirators largely

7   residing overseas (not defendant JINGLIANG SU nor any of the charged

8   co-conspirators in the related cases) contacted U.S. victims directly

9   through unsolicited social-media interactions, telephone calls and

10  messages, and online dating services.  These co-conspirators gained

11  the trust of victims by establishing either professional, friendly,

12  or romantic relationships with them.  After gaining the victims'

13  trust, the co-conspirators promoted fraudulent cryptocurrency

14  investments to the victims.  Co-conspirators established spoofed

15  domains and websites that often resembled legitimate cryptocurrency

16  trading platforms.  In some executions of the scheme, co-conspirators

17  fraudulently induced victims into investing in cryptocurrency through

18  these fraudulent and spoofed investment platforms.  In other

19  executions of the scheme, co-conspirators fraudulently induced

20  victims into investing in cryptocurrency by sending funds via wire

21  transfers to U.S.-based bank accounts.  Co-conspirators fraudulently

22  represented to victims that their investments were appreciating when,

23  in fact, those funds were stolen.

24         **Domestic Laundering Networks**: Second, a group of domestic money

25  launderers received victim funds in U.S.-based bank accounts

26  established on behalf of U.S. shell companies and caused the further

27  transfer of victim funds to domestic and international bank accounts.

28

Defendants in the related case, United States v. Lu Zhang, et al.,
23-CR-596-RGK, fit within this category of co-conspirators.  These
defendants, among other co-conspirators, worked together to register
shell companies with the California Secretary of State and/or open
bank accounts in the names of those shell companies with U.S.
financial institutions, including Bank of America ("BoA") and
JPMorgan Chase ("JPMC").  The shell company accounts received bank
wires from victims of the scheme throughout the United States.  These
individuals discussed when and how to receive and execute interstate
and international wire transfers of victim funds, arranged for the
transfer of the fraudulently obtained proceeds via interstate and
international wire transfers, and caused wire transfers to be sent
through various intermediary bank accounts before reaching their
final beneficiary.  These defendants and other money movers traveled
to financial institutions within the Central District of California
to access funds in the bank accounts used to launder fraud proceeds,
called the banks to inquire about the status of the funds, and
closely monitored the bank accounts, insuring victim funds continued
to flow into and out of the accounts.

**Bahamian Cryptocurrency Converters**:  Third, virtually all of the
victim funds flowed from U.S. bank accounts to two bank accounts at
the Bahamian financial institution Deltec Bank & Trust ("Deltec
Bank"), referred to in related court documents as Bahamas Account #1
and Bahamas Account #2.  Defendant JINGLIANG SU and defendants Jose
Somarriba and Shengsheng He in the related cases have been charged
with setting up the Bahamian entity Axis Digital Limited and the
affiliated bank account Bahamas Account #1.  Once these defendants

4

received the victim funds from transfers the money movers initiated, the Bahamian cryptocurrency converters would cause the funds to be converted from U.S. dollars to the cryptocurrency Tether, or USDT.[3] After the funds were converted to USDT, defendant JINGLIANG SU and the Bahamian cryptocurrency converters would cause Deltec Bank to transfer the USDT to a cryptocurrency wallet controlled by individuals overseas.

**Final Distribution of Victim Funds**:    Fourth, after co-conspirators laundered the victim funds from U.S.-based bank accounts to the Bahamian bank accounts and converted the funds to USDT, a network of foreign-based individuals would receive the cryptocurrency in a virtual currency wallet.  After receiving the funds in the virtual currency wallet, these co-conspirators would distribute the USDT to foreign criminals running the scam centers overseas,



---

    [3] Tether, or "USDT," is a type of cryptocurrency known as a stablecoin pegged to the U.S. dollar.  Thus, one USDT always equals one U.S. dollar.

including in the Kingdom of Cambodia.  The figure below shows the overall flow of funds in the charged scheme:

## III. DEFENDANT PARTICIPATED IN THE CONVERSION OF VICTIM FUNDS TO TETHER AND THE DISSIPATION OF VICTIM PROCEEDS TO CAMBODIA

As stated in the plea agreement (Dkt. 26 at 20-24):  Beginning from at least November 2021, and continuing through at least July 2023, in Los Angeles County, within the Central District of California, and elsewhere, defendant knowingly conspired with Co-Conspirator 1 (Jose Somarriba), Co-Conspirator 2 (Shengsheng He), Co-Conspirator 3 (Daren Li), and others, to operate an unlicensed money transmitting business.  Defendant participated in and knew of the agreement to operate an unlicensed money transmitting business and intended to help accomplish the objects of the conspiracy.  The unlicensed money transmitting business received millions of dollars in victim funds from U.S. persons targeted in cryptocurrency investment scams, also known as "pig butchering scams," and other related schemes.  Defendant's unlicensed money transmitting business converted virtually all of the victim proceeds to the cryptocurrency Tether (or USDT) for a commission.  After converting the proceeds, the unlicensed money transmitting business facilitated the transfer of the USDT to a cryptocurrency wallet controlled by individuals in Cambodia.

### *Defendant Transfers Funds Required to Open Bahamas Account #1*

Defendant conspired to operate Axis Digital Limited ("Axis Digital"), an entity that Jose Somarriba incorporated under the laws of the Commonwealth of the Bahamas on or about November 30, 2021. Using the Axis Digital business entity, defendant and his co-

conspirators opened a bank account ("Bahamas Account #1") with the Bahamian financial institution Deltec Bank.

After setting up the Axis Digital business entity and Bahamas Account #1, defendant, Jose Somarriba, Shengsheng He, Daren Li, and others conspired to transfer roughly $1 million to Jose Somarriba's cryptocurrency account to demonstrate a proof of funds to Deltec Bank. The proof of funds was required for Deltec Bank to allow wire transfers into Bahamas Account #1 from other financial institutions.

On or around June 8, 2022, Shengsheng He introduced defendant, Jose Somarriba, and Daren Li to each other on an encrypted messaging platform. Defendant and his co-conspirators participated in discussions about the transfer of roughly $1 million in cryptocurrency to Jose Somarriba. Defendant also participated in discussions about Jose Somarriba returning the roughly $1 million in cryptocurrency to the co-conspirators after sending a proof of funds to Deltec Bank. Defendant in fact sent approximately $17,862 in cryptocurrency to Jose Somarriba, who also received funds from Daren Li. Jose Somarriba then sent a proof of funds to Deltec Bank, which enabled Axis Digital to begin receiving wires from other financial institutions.

***Defendant Traveled to Cambodia to Discuss the Transfers of Cryptocurrency to Individuals Involved in Scam Centers***

In July 2022, after facilitating the opening of Bahamas Account #1, but before funds transferred into Bahamas Account #1 from victims in the United States, defendant, Jose Somarriba, and Shengsheng He traveled to Phnom Penh, Cambodia, to meet with Daren Li and other co-conspirators based in Cambodia and elsewhere. During the trip to

Cambodia, defendant and co-conspirators discussed the transfer of money from U.S. bank accounts to Bahamas Account #1, and the subsequent conversion of those funds to USDT for a commission. Defendant and co-conspirators also discussed the transfer of USDT from Bahamas Account #1 to a cryptocurrency wallet that co-conspirators in Cambodia controlled.

***Axis Digital Limited Received More Than $36 Million From U.S. Bank Accounts Opened in the Names of U.S. Shell Companies***

Between June 2022 and July 2023, the Axis Digital bank account received at least approximately $36,905,259 from U.S. bank accounts set up in the names of U.S. shell companies. Each of the shell companies received these funds from U.S. victims of cryptocurrency investment scams or related schemes. This includes the following shell entities:

a.    B&C Commerce LLC, a shell company registered with the California Secretary of State on or about January 21, 2022, with a principal address in San Gabriel, California;

b.    Jimei Trading Inc., a shell company registered with the California Secretary of State on or about May 15, 2022, with a principal address in San Gabriel, California;

c.    YXJ Trading Corporation, a shell company registered with the California Secretary of State on or about July 30, 2022, with a principal address in Monterey Park, California;

d.    YYJ Consulting Corporation, a shell company registered with the California Secretary of State on or about August 25, 2022, with a principal address in Monterey Park, California;

e.    Sea Dragon Trading, LLC, a shell company registered

1    with the California Secretary of State on or about September 8, 2022,

2    with a principal address in Alhambra, California;

3             f.    SMX Beauty Inc., a shell company registered with the

4    California Secretary of State on or about October 13, 2022, with a

5    principal address in Monterey Park, California;

6             g.    SMX Travel Inc., a shell company registered with the

7    California Secretary of State on or about October 13, 2022, with a

8    principal address in Monterey Park, California; and

9             h.    Sea Dragon Remodel, Inc., a shell company registered

10    with the California Secretary of State on or about October 17, 2022,

11    with a principal address in Vernon, California.

12        Defendant and his co-conspirators created so-called digital

13    transaction agreements and "Know Your Customer" or "KYC" forms

14    associated with the U.S. shell companies, including those listed in

15    Paragraph 8, detailing the conversion of millions of dollars to USDT.

16    The agreements each listed Axis Digital as the business entity

17    conducting the conversion of funds.  The agreements each listed the

18    same cryptocurrency address beginning with TRteo (the "TRteo

19    Address") as the receiving wallet.  Defendant knew the KYC forms for

20    the shell companies and related wire transfers did not reflect

21    legitimate business transfers.

22    ***Defendant Directed the Transfer of Funds to a Cryptocurrency Wallet***

23    ***Controlled by Co-Conspirators in Cambodia***

24        When the U.S. bank accounts set up in the names of shell

25    companies transferred victim funds to Bahamas Account #1, defendant

26    and his co-conspirators directed Deltec Bank employees to convert the

27    funds into USDT and to transfer the funds to the TRteo Address.

28

Defendant directly messaged with Deltec Bank employees to coordinate these conversions and money transfers.  Defendant and his co-conspirators converted all of the funds in Bahamas Account #1 – more than $36 million – to USDT.  Defendant and his co-conspirators then directed the transfer of all of the funds to the TRteo Address.

Defendant earned a commission on wire transfers into Bahamas Account #1 or the subsequent transfer of USDT to the TRteo Address. Defendant prepared and sent ledgers to co-conspirators detailing the commissions he and others earned on wire transfers.

In June 2023, defendant – using the alias Jingliang Su Martinez – was added as a signatory for Bahamas Account #1.  Jose Somarriba sent Deltec Bank a letter confirming that defendant had been named a director of Axis Digital Limited and would have control of Bahamas Account #1.

Defendant agrees that Axis Digital laundered at least $36,905,259 in funds from U.S. shell companies.

***Defendant Did Not Comply With Money Transmitting Business Regulations and Knew the Source of Funds Derived from a Criminal Offense***

Defendant knowingly conducted, controlled, managed, supervised, directed, or owned all or part of the Axis Digital money transmitting business, which affected interstate and foreign commerce.  The Axis Digital business was unlicensed in that it failed to comply with the money transmitting business regulation requirements under 31 U.S.C. § 5330 and the regulations promulgated under that section.  Defendant came to understand that at least a portion of the funds flowing into Bahamas Account #1 were derived from a criminal offense or were otherwise intended to be used to promote or support unlawful activity.

10

## IV.  THE USPPO'S CALCULATIONS

### A.  The Government Concurs with the USPPO's Criminal History Calculations and the Guidelines Offense Level.

The USPPO determined that defendant has zero criminal history points.  (PSR ¶ 96.)  Defendant thus falls within Criminal History Category I.  (Id.)  The government concurs with this calculation.

The PSR also calculated, based on the above facts, a total offense level of 29.  (PSR ¶ 91.)  The government concurs with the base offense level of 8 calculated by the PSR.  (PSR ¶¶ 73-74.)  The PSR's total offense level calculation is as follows:

| | | |
|---|---|---|
| Base Offense Level: | 8 | U.S.S.G. §2S1.1(a)(2) |
| Loss Amount More Than $25,000,000: | +22 | U.S.S.G. § 2B1.1(b)(1)(L) |
| Business of Laundering | +4 | U.S.S.G. § 2S1.1(b)(2)(C) |
| Acceptance of Responsibility: | -3 | U.S.S.G. § 3E1.1(a)-(b) |
| Zero Point Offender: | -2 | U.S.S.G. § 4C1.1 |

_____

| | |
|---|---|
| TOTAL: | 29 |

Based on that calculation, the USPPO recognized that a total offense level of 29 and a Criminal History Category of I yield an advisory Guidelines range of 87 to 108 months' imprisonment, though the statutory maximum sentence is 60 months.  (PSR ¶¶ 139-40.)

### B.  The Government Concurs with the PSR's Calculations.

The loss amount in these cases is devastating.  Financial tracing shows that Bahamas Account #1 received more than $36 million in funds from U.S. shell companies funneling victim proceeds that

11

were then converted to the cryptocurrency USDT and transferred to a virtual wallet controlled by co-conspirators overseas including in Cambodia.  As detailed in the Victim Impact Statements, dozens of U.S. citizens lost substantial sums of money in the scams--in some instances, their entire life savings.  Because the victim funds were wired overseas, converted to cryptocurrency and further dispersed to dozens of unhosted virtual wallets, the government was not able to freeze, seize, or recover any of the direct victim proceeds.[4]  Due to the money-laundering network, the victims' savings and supposed "investments" are gone.

    **C.    The Government Requests a 6-Level Departure.**

The government has filed a contemporaneous document requesting a six-level departure.

* * *

Accordingly, the government believes the total offense level calculation for defendant is as follows:

| | | | |
|---|---|---|---|
| Base Offense Level: | 8 | U.S.S.G. §2S1.1(a)(2) | |
| Loss Amount More than $25,000,000: | +22 | U.S.S.G. § 2B1.1(b)(1)(L) | |
| Business of Laundering | +4 | U.S.S.G. § 2S1.1(b)(2)(C) | |
| Acceptance of Responsibility: | -3 | U.S.S.G. § 3E1.1(a)-(b) | |
| Zero Point Offender: | -2 | U.S.S.G. § 4C1.1 | |
| Departure | -6 | Contemporaneous Filing | |

_____

TOTAL:                          23

---

[4] The government continues to pursue alternative ways to recover funds for victims of these cases.

12

Based on a Criminal History Category of I, the advisory Guidelines range is 46 to 57 months' imprisonment.  The government's recommended sentence is at the low-end of this advisory Guidelines range: 46 months' incarceration.

**D.    Joint and Several Restitution Obligation**

The government submits that defendant JINGLIANG SU should be held jointly and severally liable with the below-listed convicted co-participants (which list includes the defendant) in the offense conduct for the amount of restitution ordered in this judgement:

- Lu Zhang (Case No. 23-CR-596-RGK-1)
- Joseph Wong (Case No. 23-CR-596-RGK-2)
- Justin Walker (Case No. 23-CR-596-RGK-3)
- Daren Li (Case No. 24-CR-311-RGK-1)
- Yicheng Zhang (Case No. 24-CR-311-RGK-2)
- Jose Somarriba (Case No. 25-CR-181-RGK)
- Shengsheng He (Case No. 25-CR-175-RGK)
- Jingliang Su (Case No. 25-CR-362-RGK)

The victims' recovery remains limited to the amount of their loss and the defendant's liability for restitution ceases if and when the victim receives full restitution as to the defendant, or when the victims are made whole, whichever is earlier.

The government attaches hereto as Exhibit 1 to the Declaration of Special Agent John Jasek an anonymized list of victims with their respective loss amounts.  The PSR also attaches the full names of the victims with their respective loss amounts.  As noted in the PSR, the total restitution owed is **$26,867,242.44.**  (PSR ¶ 63.)  The victims listed in this document are individuals who sent funds to shell

13

companies that transferred funds to Bahamas Account #1, and who self-reported their losses to the government.  The amount listed is the amount the government can attribute to the shell company bank accounts based on the self-reporting documentation.  Because victims were often re-victimized and/or told to send their funds to different money-laundering networks, the loss amount for each victim may exceed the amount attributable to this domestic money-laundering cell.

## V.    VICTIM IMPACT STATEMENTS

The government has submitted contemporaneously with this filing a sealed document attaching victim impact statements.

## VI.    THE GOVERNMENT RECOMMENDS 46 MONTHS' INCARCERATION

The government recommends that the defendant be sentenced to a Guidelines term of 46 months' imprisonment, a three-year period of supervised release, a $100 special assessment, and restitution of $26,867,242.44.  Such a sentence is sufficient, but not greater than necessary, to achieve the purposes set forth in 18 U.S.C. § 3553(a).

### A.    Need to Afford Adequate Deterrence

Economic crimes like the charged money laundering scheme are quintessentially deterrable.  "Because economic and fraud-based crimes are 'more rational, cool, and calculated than sudden crimes of passion or opportunity,' these crimes are 'prime candidate[s] for general deterrence.'"  See United States v. Martin, 455 F.3d 1227, 1240 (11th Cir. 2006) (quoting Stephanos Bibas, White-Collar Plea Bargaining and Sentencing After Booker, 47 Wm. & Mary L. Rev. 721, 724 (2005)).  In fact, Congress, in drafting section 3553, confirmed that this common-sense principle was one of the driving forces for including deterrence among the goals of sentencing.  See S. Rep. No.

98-255, at 76 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3259 ("To
deter others from committing the offense . . . is particularly
important in the area of white collar crime.").  Indeed, Congress was
expressly concerned with the fact that "[m]ajor white collar
criminals often are sentenced to . . . little or no imprisonment,"
which the offenders disregard as "a cost of doing business."  Id.  As
Judge Bea has written, "bank fraud, unlike an assault in a tavern or
even domestic abuse, tends to be a planned, deliberate crime, which
allows plenty of time for reflection, calculation of the odds of
success or failure, and the ultimate decision."  United States v.
Edwards, 595 F.3d 1004, 1021 (9th Cir. 2010) (Bea, J., concurring).

Conspiracies like the one involved in this case are the lifeline
for international cryptocurrency investment frauds.  The funds
transferred overseas and converted to cryptocurrency give criminal
syndicates the means to traffic humans and run scam compounds.
Individuals who recklessly set up international bank accounts and
convert tens of millions of dollars must be deterred from operating
money transmitting businesses that funnel victim proceeds overseas.
Defendant's conduct was reckless at best.  After personally traveling
to Cambodia to meet with the recipients of the funds, defendant's
company and Bahamian bank account received millions of dollars from
U.S. shell companies.  Defendant and his co-conspirators converted
virtually all of the proceeds to Tether and directed the transfer of
those funds to the cryptocurrency address controlled by persons
defendant met in Cambodia.  The Court should deter this reckless
approach to conspiring to operate money services businesses.

**B.    Seriousness of the Offense**

This is a case in which the sentencing guidelines appropriately identify the factors that make defendant's conduct so serious: the millions of dollars in loss to numerous victims throughout the United States and the business of laundering funds.  Together, these factors speak to a sophisticated scheme that devastated the lives of many U.S. citizens.  The effectiveness of the crime also prevented the government from freezing, seizing, or recovering any of the direct victim proceeds.  The funds were dissipated across unhosted virtual wallets controlled by individuals overseas, primarily in Southeast Asia.

**C.    Need to Avoid Unwarranted Disparities**

Section 3553(a)(6) requires the Court to minimize sentencing disparities among similarly situated defendants.  One way of doing so is to correctly calculate the Guidelines range and then sentence defendants within that range.  See United States v. Treadwell, 593 F.3d 990, 1011 (9th Cir. 2010) ("Because the Guidelines range was correctly calculated, the district court was entitled to rely on the Guidelines range in determining that there was no 'unwarranted disparity' . . . .");  Gall v. United States, 552 U.S. 38, 54 (2007) ("[A]voidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges.").  The government's within-Guidelines recommended sentence avoids an unwarranted disparity with similarly situated defendants.

Here, defendant's co-conspirators Jose Somarriba and Shengsheng He were sentenced by this Court to 36 months' imprisonment and 51 months' imprisonment, respectively.  See Case Nos. 25-CR-181 at Dkt.

16

47, 25-CR-175.  The government's within-Guidelines recommended sentence thus also avoids unwarranted disparities among these co-conspirators.

**VII. CONCLUSION**

For the foregoing reasons, the government recommends that the Court sentence defendant to 46 months' imprisonment, three years' supervised release, a $100 special assessment, and restitution of $26,867,242.44.

## DECLARATION OF GEORGE JASEK

1.    I am a Special Agent ("SA") with the United States Secret Service and have been so employed since March 2018.  I am currently assigned to the Criminal Investigative Division in Washington, District of Columbia.  I have knowledge of the facts set forth herein and could and would testify to those facts fully and truthfully if called and sworn as a witness.

2.    Attached hereto as **Exhibit 1** is a list of U.S. victims who sent funds to shell companies that transferred their funds to Bahamas Account #1.  The amount of the loss is based on a government analysis of self-reporting documentation and shell company records.

3.    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. DATED: January 12, 2026.


_____
    GEORGE JASEK

## <u>DECLARATION OF AUSA NISHA CHANDRAN</u>

I, Nisha Chandran, hereby declare and state:

1.   I am an Assistant United States Attorney with the Major Frauds Section at the U.S. Attorney's Office for the Central District of California.  I am one of the prosecutors assigned to this case.

2.   This declaration is made in support of the government's sentencing position for defendant Jingliang Su.

3.   Attached hereto as **Exhibit 2** is a true and correct copy of a compilation of relevant victim impact statements provided to the United States Attorney's Office as of the date of this filing.

4.   I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED: January 12, 2025

_____
NISHA CHANDRAN